UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John R. Griffin, Jr.

    v.                      Civil No. 17-cv-161-LM

N.H. Department of Corrections
Commissioner William L. Wrenn and
N.H. State Prison Warden Michael Zenk[1]

## REPORT AND RECOMMENDATION

Before the court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A, and LR 4.3(d)(1), is plaintiff John R. Griffin, Jr.'s Amended Complaint (Doc. No. 10), filed in response to this court's October 4, 2017 Order (Doc. No. 9), and additional documents that supplement Griffin's claims and allegations, which the court has deemed to be addenda to the Amended Complaint.  See Doc. Nos. 13, 14.  Also before the court, and referred here for a Report and Recommendation, is Griffin's Motion for Injunctive Relief (Doc. No. 14).

## Background

In June 2016, Griffin's parole was revoked by the New Hampshire Adult Parole Board ("APB").  Griffin was incarcerated

---

[1] The Amended Complaint (Doc. No. 10) substitutes (former) New Hampshire Department of Corrections ("DOC") Commissioner William L. Wrenn and New Hampshire State Prison ("NHSP") Warden Michael Zenk for the state defendant originally named by Griffin.

at the New Hampshire State Prison ("NHSP") pursuant to that parole revocation. In a subsequent hearing on November 15, 2016, the APB reparoled Griffin and conditioned his release upon his having an approved housing plan. See Nov. 15, 2016 APB Results of Parole Hr'g (Doc. No. 1-2, at 1, 2); Mar. 3, 2017 St. Germain Resp. (Doc. No. 1-2, at 23).

On a number of occasions after November 15, 2016, Griffin requested that prison officials allow him to move to a Transitional Housing Unit ("THU") as a means of satisfying the "approved housing" requirement.[2] DOC Community Corrections Deputy Director Duffy responded that Griffin was wait-listed for parole to a THU, that such parole requests were reviewed frequently, and that Griffin or his case manager would be contacted if the request were granted. See Apr. 3, 2017 Duffy Resp. (Doc. No. 1-2, at 11). When Griffin inquired whether he could be re-classified to a lower custody level, in order to become eligible for transitional housing or a work-release placement through the classification process, his NHSP case manager and DOC Classifications Administrator Kim Lacasse

---

[2]The New Hampshire Department of Corrections operates "three Transitional Housing Units, formerly called halfway houses, and one Transitional Work Center." N.H. Dep't of Corr., Div. Cmty. Corr., https://www.nh.gov/nhdoc/divisions/community/index.html (last accessed Mar. 29, 2018).

replied that Griffin's status as a parole violator made him ineligible to be re-classified below C-3 (medium custody). See Mar. 9, 2017 Mackey Resp. (Doc. No. 1-2, at 5); Mar. 27, 2017 Lacasse Resp. (Doc. No. 1-2, at 9). Christopher Kench denied Griffin's grievance of that on the Commissioner's behalf. See Apr. 6, 2017 Dep't of Corr. Comm'r Resp. (Doc. No. 1-2, at 3).

In late 2017, Griffin obtained a placement in a THU and was paroled to that facility. See Dec. 21, 2017 Notice of Change of Address (Doc. No. 12). Griffin remained there for less than a month. In December 2017/January 2018 he was charged with walking away from transitional housing without permission, and sent back to the NHSP. See Jan. 2, 2018 MacKay Resp. (Doc. No. 13, at 6); see also Jan. 3, 2018 Griffin Inmate Request Slip (Doc. No. 14, at 5). Griffin's legal files and prescription sunglasses did not accompany him to the NHSP. See Dec. 26, 2017 Williams Resp. (Doc. No. 13, at 4).

Griffin asserts that in December 2017, an inmate in the NHSP Reception and Diagnostics Unit ("R&D") threatened him, and another inmate in the Transitional Work Center attacked him. See Doc. No. 14, at 1. Griffin was placed in protective custody after those incidents occurred. Griffin asserts he could neither access the prison law library nor make copies of documents to file in court while he was in protective custody.

See Doc. No. 14, at 1; Doc. No. 14-1, at 1; Doc. No. 13-1, at 1. At some point, prison officials transferred Griffin to the Northern New Hampshire Correctional Facility ("NCF"), where he remains.[3]

## Claims

Griffin asserts the following claims under 42 U.S.C. § 1983 in his recent filings (Doc. Nos. 10, 13, 14):

> 1. Defendants' failure to find housing for Griffin after November 15, 2016, in satisfaction of the "approved housing" requirement, violated Griffin's Eighth Amendment right not to be subjected to cruel and unusual punishment, and render the defendants liable to Griffin under state tort law.
>
> 2. Defendants' failure to waive the "approved housing" requirement subjected Griffin to an impossible parole condition and indefinite imprisonment, depriving him of a liberty interest in parole without due process, in violation of his Fourteenth Amendment rights, and render the defendants liable to Griffin under state tort law.
>
> 3. Defendants treated Griffin in a manner that differed from the treatment of other inmates, without a reasonable basis for the differential treatment, in violation of Griffin's Fourteenth Amendment right to equal protection, in that:
>
>> (a) As a parole violator, Griffin was ineligible for classification at a level below C-3 (medium custody), and inmates who were not parole violators were eligible for such classification;
>>
>> (b) As a parole violator, Griffin was not allowed to have a prison job, and inmates who were not parole

---

[3]See N.H. Dep't of Corr. Inmate Locator, http://business.nh.gov/Inmate_locator/ (last accessed Mar. 29, 2018).

4

>    violators were allowed a prison job; and
>
>    (c) Unlike Griffin, who was not reincarcerated for a drug violation, parole violators reincarcerated for drug violations have access to outpatient or inpatient drug treatment facilities in the community, facilitating their satisfaction of the "approved housing" requirement of their parole.
>
> 4. Defendants deprived Griffin of his First and Fourteenth Amendment right of access to the courts when Griffin was in protective custody.
>
> 5. Defendants delayed Griffin's receipt of legal paperwork and did not give him prescription sunglasses, in violation of his rights to due process under the Fourteenth Amendment and, as to the sunglasses, as to his rights under the Eighth Amendment.
>
> 6. Defendants withheld his grievances from DOC Commissioner Helen Hanks's consideration, to retaliate against Griffin for exercising his First Amendment rights in litigating civil cases against them.
>
> 7. Defendants failed to protect Griffin from the threat of inmate violence, in that an inmate attacked Griffin, and an inmate threated Griffin, before he was placed in protective custody.

Griffin seeks damages and injunctive relief.

## Discussion

I. **Preliminary Review**[4]

    A. **Federal Claim 1**

In Claim 1, Griffin asserts that defendants' failure to find him housing after November 15, 2016 violated his Eighth

---

[4]The court in conducting a preliminary review of Document Nos. 10, 13, and 14, applies the preliminary review standard set forth in the October 4, 2017 Order (Doc. No. 9).

5

Amendment right to avoid cruel and unusual punishment. Griffin, from November 15, 2016 until his transfer to transitional housing in December 2016, remained incarcerated at the NHSP, because the "approved housing" condition on his release on parole had not been satisfied.

A convicted person serving a valid sentence of incarceration has no federal constitutional right to release from incarceration, on parole or otherwise, "'before the expiration of a valid sentence.'" González-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)). In general, "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum v. Fano, 427 U.S. 215, 225 (1976).

Griffin is serving a valid sentence within the state correctional system. Griffin has not alleged facts to show that his continued confinement at the NHSP between November 15, 2016 and December 2016, per se, amounted to cruel and unusual punishment. Griffin has also failed to allege facts showing that the conditions of his confinement during that period failed to meet the "'minimal civilized measure of life's necessities.'" Brown v. Plata, 131 S. Ct. 1910, 1959 (2011) (Eighth Amendment

6

"prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities'" (citation omitted).  Additionally, Griffin has not alleged facts showing that any defendant was deliberately indifferent to any substantial risk of serious harm to Griffin during that time period.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Accordingly, the district judge should dismiss Claim 1.

    B.    Federal Claim 2

Griffin asserts that his Fourteenth Amendment due process rights were violated by defendants' failure to waive the "approved housing" requirement and release him after November 15, 2016, given his indigence and the paucity of approvable, affordable housing in the state.  Griffin asserts that the "approved housing" requirement was essentially an impossible parole condition, which, under the circumstances, violated his right to due process to the extent it precluded his release.

A precondition to asserting a viable due process claim challenging continued confinement is that prison officials deprived the inmate of a protected interest in liberty.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); González-Fuentes, 607 F.3d at 880 & n.13.  Griffin asserts here that he had a liberty interest in being released on parole during the relevant time period.  Griffin, however, previously suffered the

dismissal of a due process claim resting on the same underpinning. See Griffin v. N.H. Dep't of Corr., No. 17-cv-194-PB (D.N.H.) ("Case No. 194") 2017 DNH 200, 2017 U.S. Dist. LEXIS 154995, at *6-*8, 2017 WL 4404400, at *3 (D.N.H. Sept. 21, 2017) (ECF No. 10) (recommending dismissal of due process claim because Griffin lacked a protected liberty interest in being released on parole (citing cases including )), approved by 2017 U.S. Dist. LEXIS 161847, 2017 WL 4402395 (D.N.H. Oct. 1, 2017) (ECF No. 12). Judgment entered in that case, and Griffin did not file an appeal. Griffin cannot succeed here in arguing that he had a protected liberty interest in being released on parole on November 15, 2016, in light of the result and reasoning in Case No. 194.

Further, Griffin has failed to show that any defendant violated his right to substantive due process. To do so, "the plaintiff must meet . . . '[an] onerous requirement' to prove a substantive due process violation: 'the state actions must shock the conscience of the court.'" Irish v. Maine, 849 F.3d 521, 526 (1st Cir. 2017) (citation omitted). "To meet this standard, the state actions must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Id. (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

Griffin argues that it was fundamentally unfair for defendants to keep him incarcerated based on an "approved housing" condition he asserts he could not meet, in part because he was indigent. Assuming, without deciding, that any defendant here had the discretion to waive a condition on Griffin's release imposed by the APB, a decision not to exercise such discretion would not shock the conscience, as the condition at issue was both reasonable and consistent with the APB's authority. See N.H. Admin. R., Par 301.03(b)(2) (APB "shall consider" residence, neighborhood, and community in which inmate intends to live, in determining whether to release inmate on parole). Moreover, documents attached to Griffin's pleadings, showing that he was waitlisted for and ultimately placed in a THU, belie his claim that the "approved housing" requirement was impossible to satisfy.

Griffin points out that there are few affordable housing options in New Hampshire for indigent parolees, and that his ineligibility for a prison job and low state pay made it essentially impossible for him to save money for housing. Whatever merits such policy arguments might have for corrections officials and lawmakers contemplating the reintegration of offenders into the community, they do not alter this court's decision regarding whether Griffin has stated a viable due

9

process claim.[5] Griffin has failed to plead a cognizable due process claim arising from the maintenance of an "approved housing" requirement on Griffin's parole, and the district judge should dismiss Claim 2.

C. State Law Claims (Claims 1 and 2)

Griffin asserts tort claims in this action relating to the claims identified in this Report and Recommendation as Claims 1-2. Because the court finds that Griffin has failed to state a federal claim upon which relief might be granted as to Claims 1-2, the district judge should decline to exercise its supplemental jurisdiction, see 28 U.S.C. § 1367(c), and should dismiss those state law claims without prejudice to Griffin's ability to refile such claims in state court.

D. Claim 3

In Claims 3(a)-3(c), Griffin asserts that defendants violated his right to equal protection by treating him differently than other, similarly situated, inmates at the NHSP. To establish an equal protection claim, a plaintiff needs to allege facts showing that "'(1) the [plaintiff], compared with

---

[5]Griffin argues that it was irrational for the state to pay for his continued incarceration, where it would have been less expensive to loan him money to pay for an apartment, and that his community housing options became more limited when prison officials deemed a number of specific rooming houses and apartments unsuitable for inclusion in approvable housing plans.

10

others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure'" the plaintiff.  Davis v. Coakley, 802 F.3d 128, 132-33 (1st Cir. 2015) (citations omitted).

Griffin claims that his status as a parole violator, the fact that his parole violation did not involve drug use, and the fact that he was indigent, were the reasons he was treated differently by prison officials.  None of those groups comprises a suspect class entitled to heightened scrutiny.  See Harris v. McRae, 448 U.S. 297, 323 (1980) ("poverty, standing alone" is not a suspect class); White v. Dir., Va. Dep't of Corr., 105 F. Supp. 2d 515, 517, 523 (W.D. Va. 2000) (parole violators are not suspect class).  The court therefore looks to whether "'there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 366-67 (2001) (citations omitted).

### 1.   Classification and Prison Job (Claims 3(a), 3(b))

Griffin claims that DOC has violated his equal protection rights by prohibiting him from being classified at a custody level lower than C-3 (medium custody), and for eligibility for a

prison job, because he was a parole violator.  Parole violators' history of violating conditions of release imposed upon them is a rational basis for treating them, as a class, differently from other inmates in making custody decisions and allocating prison jobs.  Because there is a rational basis for treating the class of parole violators and other inmates differently in those respects, Griffin has failed to state an equal protection claim upon which relief can be granted as to his alleged ineligibility for prison jobs and re-classification, and the district judge should dismiss Claims 3(a) and 3(b).

Additionally, as to Claim 3(b), Griffin has failed to allege any facts showing that either of the named defendants, Warden Zenk or Commissioner Wrenn, through their own acts or omissions, caused Griffin to be denied any prison job while he was incarcerated as a parole violator.[6]  Accordingly, Claim 3(b) is subject to dismissal on that basis.

### 2. Housing Options for Drug Users (Claim 3(c))

Griffin argues that if his parole violation had involved drug use, he would have had access to housing options that are reserved for parole violators with a history of drug violations.

---

[6]The court previously granted Griffin an opportunity to file an amended complaint to allege what each individual defendant did or did not do that violated Griffin's rights.

12

There is a rational basis for assigning a higher priority for such housing options with access to treatment services to parolees with a demonstrated need for community-based drug treatment. Accordingly, Griffin has failed to state an equal protection claim upon which relief can be granted, with respect to Claim 3(c).

    E.    Claim 4

Griffin has asserted that while in protective custody at the NHSP, beginning in December 2017/January 2018, he could neither access the prison law library, nor make copies for filing in court. Additionally, he alleges that his legal files did not accompany him when he was transferred from a THU to R&D. In the absence of allegations regarding any actual injury suffered by Griffin in his pending or planned litigation, the allegations regarding Griffin's lack of access to a law library and his missing legal materials do not state a claim of a denial of his right of access to the courts. Cf. Lewis v. Casey, 518 U.S. 343, 352, 354-56 (1996). The district judge should dismiss Griffin's denial of access to the courts claim.

    F.    Claim 5

Griffin has asserted that neither his prescription sunglasses (which he asserts he needs to differentiate people at a distance of 120 feet), nor his legal paperwork, accompanied

13

him when he was transferred to R&D.  Griffin cannot maintain federal due process claims regarding the loss of those items, as post-deprivation remedies are available to redress the loss.  Cf. Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.").  Moreover, as to the prescription sunglasses, Griffin has filed an exhibit as part of his complaint addendum, see Dec. 26, 2017 Williams Resp. (Doc. No. 13, at 4), stating that Sgt. Williams, the officer to whom Griffin complained, had reviewed Griffin's medical records and could not find a reference to a special need for the sunglasses at issue.  Therefore, Griffin has not pleaded any facts that demonstrate that any officer or defendant in this case took action relating to Griffin's prescription sunglasses with deliberate indifference to a substantial risk of serious harm to Griffin.  The district judge should dismiss Griffin's lost property due process and Eighth Amendment claims, relating to the legal paperwork and Griffin's sunglasses.

    G.    Claim 6

Griffin asserts that he believes his grievances to current

DOC Commissioner Helen Hanks "are being withheld from her consideration, to further marginalize and oppress me" in retaliation for his civil actions against prison officials. Doc. No. 13, at 1.  The allegations regarding retaliation are entirely speculative and conclusory, and Claim 6 should be dismissed on that basis.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

    H.    Claim 7

Construing his allegations liberally, Griffin asserts that prison officials failed to protect him from the threat of inmate violence at the Transitional Work Center in December 2017 and in R&D, after his transfer there from the THU.  Griffin's federal claims of endangerment relating to inmate violence do not belong in this case, as they do not arise from the same case or controversy as the claims asserted either in the original complaint, or in the Amended Complaint (Doc. No. 10) in this matter.  The district judge, therefore, should dismiss those claims without prejudice to Griffin's ability to file them in a new case.  Cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits . . . to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act).

## II. **Motion for Injunctive Relief (Doc. No. 14)**

Construed liberally, Document No. 14 seeks preliminary injunctions and other non-monetary relief in this case, including an order of release, an order directing that Griffin receive a loan of state funds to pay for approved housing, and an order advising Attorney Chuck Douglas of Griffin's claimed exposure to inmate violence. To obtain such relief, Griffin must "'establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

As to Griffin's request that the court issue an Order to provide Attorney Chuck Douglas with information, Griffin has not demonstrated any substantial impediment to being able to contact that lawyer on his own. Accordingly, Griffin cannot demonstrate that, without a court order, he would be irreparably harmed, and the district judge should deny Griffin's request concerning Attorney Douglas.

As to Griffin's requests for release and a loan, Griffin has not demonstrated a likelihood of success in this case on the

16

merits as to the claims underlying those requests. The district judge should therefore deny these requests.

As to the threat of inmate violence, the court notes that Griffin alleges he was placed in protective custody at the NHSP. Further, it appears Griffin is presently housed at NCF. Nothing before this court suggests that injunctive relief is necessary to ensure that Griffin is not subjected to irreparable harm, based on incidents relating to inmate violence that are alleged to have occurred while he was in Concord at the NHSP. Accordingly, the district judge should deny all of his requests for injunctive relief.

## Conclusion

For the foregoing reasons, the district judge should dismiss all claims asserted in Document Nos. 10, 13, and 14. Griffin's claims of tortious conduct under state law should be dismissed without prejudice to Griffin's ability to refile his state law claims in state court. Griffin's claims of Eighth Amendment violations relating to incidents involving inmate violence or threats (Claim 7) should be dismissed without prejudice to his ability to refile such claims in a new lawsuit. Griffin's motion for injunctive relief (Doc. No. 14) should be denied, and the case should be closed.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 3, 2018

cc:   John R. Griffin, Jr., pro se